300 So.2d 555 (1974)
Don R. WILEY, Jr., Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellees.
No. 4666.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
Writ Refused November 27, 1974.
*556 Arthur Cobb, Baton Rouge, and William Avery, Jonesville, for plaintiff-appellant.
Provosty & Sadler by Albin A. Provosty, Alexandria, for defendant-appellee.
Before FRUGÉ, CULPEPPER and WATSON, JJ.
WATSON, Judge.
Plaintiff appeals from an adverse jury decision in a medical malpractice case involving an examination of plaintiff before transfer to another hospital for treatment by specialists. The plaintiff is Donald R. Wiley, Jr. and the defendants before the court at the time of trial on the merits were Dr. Richard R. Michel; Marksville General Hospital; St. Paul Fire and Marine Insurance Company, the medical malpractice insurer of Dr. Michel and the liability insurer of the hospital; and William Jackson Brown, the driver of the automobile in which plaintiff was riding at the time of the accident.
Other defendants who had been dismissed prior to trial by reason of settlement were Enick Dauzat, d/b/a Marksville Ambulance Service, Walter Ponthieux, and St. Francis Cabrini Hospital, as well as the liability insurers of these parties.
*557 The jury returned a verdict in the amount of $500,000 in favor of plaintiff and against defendant Brown, the automobile driver, but found in favor of the other defendants. Plaintiff now urges that there was error in several particulars and that the jury verdict should be reversed. Plaintiff especially urges that he should be granted judgment against Dr. Michel on the malpractice theory.
The errors assigned by plaintiff reflect the issues which are before this court on appeal. These may be summarized as follows:
(1) Did the jury err in holding that Dr. Michel was not negligent and not liable for plaintiff's injuries?
(2) Is the award of damages manifestly inadequate?
(3) Was there error in the disclosure to the jury of the details of the settlement with certain parties and in submitting the question of negligence by these parties to the jury?
(4) Did the court err in a comment made concerning the purpose of cross-examination by counsel for plaintiff?
(5) Did the court improperly allow the defense to call three doctors not named in answers to interrogatories propounded to the defendant hospital?
The facts concerning the automobile accident and the subsequent events are relatively simple and relatively undisputed except in certain details which are not decisive of the various issues.
At approximately 7:30 A.M. on December 5, 1971, plaintiff was asleep in the rear seat of an automobile driven by defendant Brown traveling from Crowley, Louisiana to Jonesville, Louisiana on Highway 115.
At a point approximately eight miles south of Marksville, Louisiana, the automobile left the road and wrecked, causing severe injuries to plaintiff consisting chiefly of fractures in the cervical region. An ambulance owned by Enick Dauzat and driven by Walter Ponthieux picked up plaintiff at the scene of the automobile wreck and transported him to Marksville General Hospital. At the Marksville hospital, plaintiff was examined by Dr. Richard R. Michel, a general practitioner who happened to be in the hospital at the time. Dr. Michel diagnosed plaintiff's condition without removing him from the ambulance stretcher and without the benefit of x-rays as a facial laceration, a broken hip and possible fracture of the right arm. He talked by telephone to the mother of plaintiff who was a nurse on duty at a hospital in Jonesville, Louisiana, and, pursuant to their discussion, he ordered plaintiff transferred to St. Francis Cabrini Hospital in Alexandria. Plaintiff, who actually had a broken neck, was then returned to the same ambulance to be taken to Alexandria without any immobilization, sandbagging, or other precautions and without an attendant in the back of the ambulance.
Upon arrival at the Alexandria hospital, the plaintiff was quickly diagnosed as having a broken neck, not a broken hip and a broken arm. He was immediately transferred to Shreveport for neurological care, but, at the time of trial, he was paralyzed from the neck down.
Plaintiff's principal contention is that Dr. Michel was negligent in failing to discover plaintiff's true condition in Marksville and in failing to take proper precautions to guard against aggravation of the injury, the theory being that on the ambulance trip from Marksville to Alexandria, plaintiff suffered an aggravation of his broken neck which resulted in paralysis. Defendants concede that Dr. Michel was wrong in his diagnosis but contend that his examination and diagnosis did not fall below the standard of skill ordinarily employed under similar circumstances by members of his profession in the area and, thus, he is not liable to plaintiff for any *558 injuries resulting from the incorrect diagnosis.
The case was tried to a jury with many witnesses testifying, including doctors who testified on behalf of plaintiff and doctors who testified on behalf of Dr. Michel. As noted above the jury found in favor of plaintiff and against William Jackson Brown in the amount of $500,000. The jury also found in favor of defendants, Marksville General Hospital, Dr. Richard R. Michel and St. Paul Fire and Marine Insurance Company, and against plaintiff. Certain special findings were required of the jury and, in answer to these, the jury found negligence causing the accident and plaintiff's injuries on the part of William Jackson Brown but no negligence by Dr. Michel, the Marksville hospital, the ambulance driver or St. Francis Cabrini Hospital. However, the jury found that Enick Dauzat, the ambulance owner, was guilty of negligence causing plaintiff's injuries. No damages were assessed against Dauzat because he was out of the case at this point.
In this factual setting, we will now consider the various issues raised by plaintiff's specifications of error.
I. Liability of Dr. Michel.
Counsel for plaintiff argues that the verdict of the jury on the issue of Dr. Michel's negligence is against the weight of the evidence. The contention is that this court should weigh the evidence and decide the case differently from the jury. Plaintiff's counsel argues, very eloquently and very vigorously, that, if this court believes plaintiff's evidence to be stronger and more persuasive than defendants' evidence, then the verdict of the jury should be reversed and a judgment entered in favor of plaintiff.
We do not share counsel's analysis of our task in reviewing the case on appeal. Ours is not the primary duty of weighing the evidence, judging the credibility of witnesses or evaluating the strength of the various experts' opinions. On the contrary, these tasks are allotted initially to the triers of fact, here the jury; and the conclusions of the jury as to facts should not be disturbed unless manifestly erroneous. See Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3 Cir. 1971); and Busby v. St. Paul Fire & Marine Insurance Company, 290 So.2d 701 (La.App. 1 Cir. 1974); writ denied, La., 294 So.2d 546. The intermediate appellate court is to examine the record and to review the facts to determine whether there is a reasonable evidentiary basis for the decision by the triers of fact. Dunlap v. Armendariz, 265 So.2d 352 (La.App. 4 Cir. 1972).
Appellate review had been described recently by the Louisiana Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (La., 1973), as follows:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." 283 So.2d 716 at 724.
Narrowed, therefore, the issue is whether there is a reasonable evidentiary basis for the jury's holding that Dr. Michel was not guilty of negligence causing plaintiff's injuries. Stated differently, the issue *559 is whether the jury's conclusion that the doctor was not negligent was based on reasonable evaluations of credibility and reasonable inferences of fact, free of manifest error. The standard of care required of Dr. Michel is as follows:
"... the law only exacts of physicians, surgeons and dentists that degree of skill and care which is usually possessed and exercised by practitioners of their profession in the same locality or community and makes it their duty to use reasonable care and diligence, along with their best judgment, in the application of their skill to the case before them." Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 at 786 (1954).
Our examination of the record reveals that on the issue of Dr. Michel's negligence, two doctors testified on behalf of plaintiff giving evidence which can be summarized as indicating that Dr. Michel's examination amounted to a deviation below the standard of ordinary care by a physician in similar circumstances. These were Dr. George Frankhouser, a general surgeon who practices as a Naval surgeon in San Diego, California, and Dr. Lloyd T. Champagne, a general surgeon of Baton Rouge.
Testifying for defendant were three physicians. Dr. S. A. Abramson, a general practitioner of Marksville, testified that he would have treated plaintiff in the same manner as did Dr. Michel. Dr. Edmond John Kalifey, another general practitioner of Marksville, testified that the treatment rendered by Dr. Michel was not a deviation from the standard of care exercised by doctors of the area. Dr. C. W. Lowrey, an orthopedic surgeon of Alexandria, testified that Dr. Michel's transfer of plaintiff without moving him from the stretcher and without x-raying him was the best treatment possible under the circumstances at the time.
In addition there is considerable lay testimony which relates, perhaps not quite so directly, to the question of Dr. Michel's negligence.
Therefore, we conclude that there was ample testimony before the jury from which the jury, upon reasonable evaluation of credibility and reasonable inference of fact, could have drawn either conclusion, that Dr. Michel was negligent or that Dr. Michel was not negligent. The jury concluded after seeing the witnesses and hearing the evidence that Dr. Michel was not negligent and we cannot declare their conclusion to be manifestly erroneous.
II. Quantum.
Plaintiff contends that the award of a half-million dollars by the jury is inadequate.
It is doubtful that the defendant, William Jackson Brown, a 17-year-old oil company roughneck, whom the jury cast in judgment can even begin to satisfy the amount of damages found by the jury. The strong implication in the arguments presented on behalf of plaintiff is that a serious issue as to quantum arises only if a judgment should be entered against the defendant, Dr. Michel, and his insurer.
In any event, the jury is accorded "much discretion" in assessing damages and we cannot say that the discretion has been abused. LSA-C.C. art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
III. Disclosure to jury of settlement; jury answering interrogatories concerning liability of other defendants.
We have examined the voluminous record of this litigation and we have been unable to find an indication of what precisely was disclosed to the jury concerning settlement with the defendants who were *560 let out of the case prior to trial. If plaintiff had an objection to the disclosures made to the jury, a clear objection should have been made to whatever was done. The objection would be reflected in the record. Finding nothing to review, we cannot consider the first phase of the third specification of error.
As to the submitting of interrogatories to the jury concerning the liability of defendants no longer a party to the suit, we find no error in this procedure since, obviously, there was no way to keep the information from the jury that other defendants or potential defendants had been involved in the circumstances of the case. Evidence was presented, and we feel certain that the various counsel made arguments relating to the cause of plaintiff's injuries and their exacerbation. To submit the question of negligence on the part of the ambulance driver, the ambulance owner and the other hospital may have assisted the jury in properly framing the verdict. We see no prejudice to plaintiff in requiring the jury to answer questions concerning the negligence of the various parties involved.
Also plaintiff suggests that there was no evidence on which the jury could find that Enick Dauzat was negligent. It is doubtful that a resolution of this suggestion one way or the other is essential to a decision of the appeal. However, we have determined that there is evidence in the record on which such a finding could be made.
IV. Remark by the court.
This error as suggested by plaintiff arises from the following exchange while counsel for plaintiff was cross-examining Dr. Michel:
"Q. So even though you do say negative findings you thought it wasn't a good idea to tell me about being able to move his neck and all of that at that time.
"A. I didn't have it down, you didn't ask and I never thought about saying it.
"MR. PROVOSTY: Your Honor, if he would read the entire deposition the Jury wouldn't get the erroneous idea.
"BY THE COURT: You will have your turn.
"MR. PROVOSTY: I understand that.
"BY THE COURT: The art of cross-examination is trying to confuse.
"MR. COBB: Well Judge I don't appreciate that, I am trying to find the truth." (TR. 1077-1078)
Plaintiff contends that the court's phrase "trying to confuse" prejudiced him in the eyes of the jury. While obviously better left unsaid, we do not believe the remark resulted in serious detriment to plaintiff's case.
We do not think that the remark by the trial judge can be construed as a comment on the evidence or as a sufficiently prejudicial comment to impair plaintiff's right to a fair trial. We view the incident as being in the nature of harmless error.
V. Objection to the testimony of certain witnesses.
Plaintiff's specification of error arises from the following circumstances. Plaintiff's counsel propounded interrogatories to the Marksville General Hospital, not to Dr. Michel or to their insurer, requesting a list of witnesses who would testify on behalf of the hospital at the trial. These were answered by counsel for the hospital but no mention was made of three physicians who were called as witnesses on behalf of Dr. Michel. The same attorney represented the hospital, Dr. Michel, and their insurer, both being insured by the same company. When the doctors were called to testify on behalf of Dr. Michel, counsel for plaintiff objected on the basis that he had not been furnished their names in the interrogatories to the hospital. The trial court ruled in effect that the interrogatories had been submitted only to the hospital and, therefore, there was no improper failure to disclose the witnesses. Also, the trial judge observed that
*561 "... the interest of justice [is] a lot more important than these technicalities between counsel ..." (TR 1162)
The trial judge was correct in holding that plaintiff was not entitled to object to witnesses on behalf of Dr. Michel who had not been named in the interrogatories to the hospital. The answer to interrogatories on behalf of the hospital, in our opinion, in no way limited Dr. Michel as to witnesses he might call. Therefore, we conclude that this specification of error is not well taken.
ORDER
None of the specifications of error having been found to have merit, we conclude that the verdict of the jury and the judgment of the trial court should be affirmed. Costs of the appeal are taxed against the appellant.
Affirmed.
CULPEPPER, J., concurs in the decree but does not agree that the Canter case changes our previous rules of appellate review.