LEMMON, Judge.
This appeal principally questions a finding of concurrent negligence between the drivers of two westbound trucks involved in a highway collision.
The rainy morning accident occurred on a six-lane, divided highway in a commercial district. Plaintiffs were Milton and Lawrence Anderson, the driver and passenger respectively in the truck traveling in the center of three westbound lanes. Defendants were John Raines, the driver of the truck which had been traveling in the left lane prior to the accident, and his employer and its insurer.
Milton Anderson testified that a large truck moved into the previously clear center lane, about 15 feet in front of him, and that although he swerved to the right, he was unable to avoid striking the truck.
Raines admitted that, while driving 20 to 30 miles per hour, he switched from the left to middle lane to avoid striking a car which had stopped suddenly in the left lane ahead of him. He insisted, however, that he traveled 10 to 20 seconds in the middle lane before being struck by plaintiffs’ truck.
Raines was admittedly negligent in following too closely behind the traffic in the left lane, but this negligence did not cause him to collide with preceding traffic, since he managed to change lanes. However, the sudden lane change may also have constituted negligent behavior, if done at a time that the move could not be made with safety. R.S. 32:79. Thus, the critical factual determination as to whether *860 Raines’ lane change was negligent and causative of the accident is the distance between Raines and Anderson at the time-Raines entered the center lane.
Lawrence Anderson’s testimony added nothing significant on this key issue. However, the investigating officer’s testimony as to Raines’ statement on the scene conflicted with Raines’ assertion at trial that 10 to 20 seconds elapsed between the lane change and the collision.[1]
We conclude the record does not support the trial judge’s finding of concurrent negligence. The only indication of negligence on Anderson’s part is Raines’ assertion he was in the center lane for 10 to 20 seconds before being struck in the rear. If Raines’ version was accepted, then Anderson negligently ran into the rear of Raines, and Raines was free of liability in the collision; however, if Anderson’s version that the accident occurred immediately upon Raines’ lane change, then Raines’ negligence caused the collision and Anderson was free from fault. Under the respective narratives, either Anderson or Raines was solely negligent, and there was no other evidence on which the finding of concurrent negligence could be based. We hold such a finding was manifestly erroneous.
We ordinarily would not, on the cold record, resolve two conflicting factual versions of an occurrence. We note, however, that Raines’ version at trial conflicted with his post-accident statement to the investigating officer. Also persuasive, though not conclusive, is the consideration that Raines’ account of how he was suddenly rear-ended after traveling 10 to 20 seconds in the middle lane, without any indication that he slowed or stopped or that other unusual circumstances occurred, is not as plausible as Anderson’s version that the collision was incidental to Raines’ admitted abrupt change of lanes.
We therefore conclude that Raines’ substandard behavior solely caused the accident.
QUANTUM
Since we reverse the finding that Milton Anderson was concurrently negligent, we proceed to set an award for him based on the record.
He sustained a fracture of the distal forearm in the September IS, 1971 accident. After wearing a cast for about seven weeks, he began physical therapy. By December 8, 1971 his range of motion had gradually increased, and he displayed only moderate weakness and complained of mild aching. He was then allowed to resume light duty and returned to work on January 7, 1972.
After continued improvement, the treating orthopedic surgeon on January 26, 1972 opined he would expect only a small residual disability in range of motion and some occasional aching. The record contains no indication Anderson’s earning capacity will be impaired.
*861 The doctor also commented that Anderson had sustained a mild neck injury, which resulted from mild aggravation of a congenital defect.
Anderson’s medical expenses of $591.38 were paid by his employer’s compensation insurer.
We conclude the evidence justifies an award of general damages in the amount of $3,500.00. We further award $1,440.00 for loss of wages (16 weeks at $90.00). We set the expert fee for the doctor’s deposition testimony at $75.00, to be taxed as costs, together with the $56.90 cost of transcribing the deposition.
Lawrence Anderson answered the appeal and requested the judgment be amended to increase his general damages award and to award his loss of wages. He sustained a cervical strain and a shoulder contusion, for which a general surgeon dispensed diathermy treatment and prescribed medication. After the Wednesday accident, Lawrence Anderson missed work on Thursday and Friday and returned to his regular duties the following Monday. He never sought any further medical attention. His total medical expenses were $101.00.
We conclude the $500.00 award for general damages was within the range of discretion accorded the trial judge. However, the record supports an award for loss of wages in the amount of $28.00, and the judgment will be increased in this amount.
Accordingly, the judgment of the trial court is reversed in part, and it is now ordered that there be judgment in favor of Milton Anderson and against all defendants in the amount of $4,940.00, together with legal interest thereon from the date of judicial demand until paid. The judgment of the trial court in favor of Lawrence Anderson is amended to increase the award by $28.00 and is affirmed as amended. All costs are assessed against defendants.
Reversed and rendered in part, amended and affirmed in part.

. On this point the officer testified as follows :
“A. From his statement, he was proceeding west in the south lane, sir. He had to come over to the center lane due to the fact that that a vehicle came to a fast stop. To avoid hitting the vehicle in the rear, he had to change lanes. At that time, Mr. Anderson’s truck rear-ended him, sir.
“Q. Did Mr. Raines tell you at that time whether he did switch lanes, and that he did it very fast?
“A. Yes, due to the fact that he would have rear-ended the other car that came to a fast stop.
“Q. From your investigation, how soon was the accident, as Mr. Raines was changing lanes ?
“A. Yes, I believe that is what he said.
“Q. And he definitely told you, and does your report indicate that he told you that a vehicle ahead came to a fast stop, and then he switched lanes, and then the accident happened?
“A. Yes, sir.”