PAVY, Judge.
Plaintiff filed this tort claim against Lamb Industries, Inc. and its insurer for serious injuries sustained when, as an employee of Hercules Drilling Co., he fell about 21 feet from a rig floor to the ground. The case was tried before a jury which rendered a special interrogatory verdict that plaintiff was not injured as a result of the negligence of any of the employees of Lamb Industries, Inc. Plaintiff has appealed.
Lamb Industries, Inc. operates an oil well casing service. It rents casing tools and equipment and furnishes personnel to effect the casing. In this case, the casing equipment had been brought to the well site about 24 hours before the accident, the casing had been completed and the casing equipment was being unloaded from the rig floor onto the ground. The equipment was to be lifted from the rig floor by means of an air hoist and cable. To get the equipment beyond the rig floor for lowering to the ground it was necessary that the equipment be pushed or guided outward from the center of the rig. Plaintiff and a co-employee were thus pushing or guiding the particular pack of equipment (called bales). To steady or support himself at the edge of the rig floor, he grabbed a guardrail of the rig which, because it was broken, gave way causing plaintiff to lose his balance and fall.
Plaintiff seeks to hold Lamb and its insurer liable under two theories. One is that, in sending the truck to pick up the equipment, Lamb failed to furnish the truck driver with a helper (commonly called swamper) who could assist the driver in using the truck winch to guide and pull the equipment beyond the rig floor as it was raised by the air hoist. Plaintiff argues this would have obviated the necessity of him guiding and pushing the equipment and thus the accident would have been avoided.
The evidence is quite conclusive that the duty of getting the equipment on and off the rig floor is that of the drilling concern. It controls this procedure and makes all decisions as to the method of loading and unloading. There is evidence that personnel of the casing service will sometimes assist in this loading and unloading but this is not the usual case. Any such assistance is voluntary and does not affect the drilling company’s overall responsibility for, *772 and control of, the loading and unloading process.
Leland Bearb, the Lamb truck driver who had gone to get the equipment when the accident happened, testified that swam-pers are usually not furnished in such situations. He stated that the winch is only used in this operation when the driller (the individual second in authority at the rig) requests it. He stated that he was instructed to back his truck up near the rig and wait and that he was told that they would use the winch line to unload some 350’s (heavier and more bulky casing equipment than the bales being used when plaintiff was injured).
Plaintiff testified that he and three other employees were instructed by their boss to go help the truck driver load the equipment onto his truck. He did not testify that there were any discussions with the truck driver about using the winch and the decision to move the bales without the winch was made between himself and his co-employees as a sort of routine matter.
Mr. Arthur Boudreaux, the toolpusher for Hercules and top man in authority at the rig, testified that the truck driver had arrived early and was told to wait until the equipment was moved off the floor and onto the ground. He did not want or expect the use of a winch for moving the bales and stated that he could have had the use of the truck winch if he wanted it.
Lunar Fontenot, one of plaintiff’s co-employees who was assisting in the unloading, testified that no effort was made to use the Lamb truck’s winch.
Mr. A. Davenport, the driller in charge of the crew in which plaintiff was working, stated that they did not seek to use the winch line for removal of the bales and could have brought the bales beyond the derrick floor with an outside line.
We cannot say that the jury erred in not finding Lamb Industries, Inc. negligent for not furnishing a swamper. There is substantial if not convincing evidence that it was never intended to use the winch line. The Hercules official and employees, including plaintiff, did not expect or try to use the winch line. If they had wanted to do so the absence of a swamper would hardly have prevented it. There were ample personnel, including plaintiff and his co-employees, who could have handled the winch line. It was the drilling company’s function, not that of the casing service, to get the equipment off the rig floor and onto the ground.
Plaintiff’s other charge of negligence is that Lamb’s employees broke the guardrail the night before when the casing equipment was loaded onto the rig floor and that it was its (Lamb’s) responsibility to immediately repair the damage and is liable for its broken and unstable condition when plaintiff fell the next night.
Plaintiff presented two versions of how the guardrail was broken. One is that it was improperly used as an anchor for a tail rope (used to guide and control heavy equipment being moved about the rig) and that the excessive strain caused the damage to the guardrail. The other version is that while the equipment was being loaded onto the rig floor it slammed against the handrail and broke it.
Plaintiff arrived at the rig site the previous night after the casing equipment had been put on the rig floor. He claimed that he saw a tail rope tied to the guardrail. Both the toolpusher and driller for Hercules denied that any such use of the handrail would be allowed and stated that they always provided a standard or some other solid structure for anchoring the tail rope. Further, plaintiff’s own witness, Joseph Soileau, who was operating the air hoist in loading the equipment onto the rig floor the previous night, testified that the guardrail was broken, not by using it as an anchor for a tail rope, but when equipment being lifted onto the rig floor hit the guardrail. He was the only witness who had direct knowledge of the guardrail being broken.
*773 None of the ordinary personnel of the Lamb casing crew knew anything about the breaking of the guardrail. They were dismissed as witnesses with a stipulation that no presumption would he had because of their failure to testify. Mr. Wilbert Clement, the toolpusher for Lamb and in charge of the casing crew, did not know that a guardrail had been broken until long after the accident. He stated that any damage to a rig for which Lamb would have been responsible would have been temporarily repaired immediately. The driller or tool-pusher of the drilling company would have been notified and the ultimate permanent repair would have been the drilling company’s concern and cost of repairing billed to the casing service. It appears that many such accidents happen at the rig site and the drilling concern does its own repair and bills the responsible party if the cost is sufficient.
The witness Joseph Soileau was operating the air hoist to lift the equipment from the ground onto the rig floor. He saw the equipment bump against the guardrail and stated that he called to the driller about the incident but could not say that he was heard because of the engine noise generally about a rig. The driller himself had no knowledge about the incident until after the accident. Thus it appears that the only person who was aware of the breaking of the guardrail was Soileau, a Hercules employee.
As previously noted, the loading of the equipment onto the rig floor is the responsibility of the drilling concern. Though there is testimony that personnel of the casing crew sometimes aid in this, it often happens that they are about their own business up on the rig floor during loading. The witness Soileau could not say that the Lamb crew participated in loading the equipment onto the rig floor that night, nor could anyone else. Further, there was a complete lack of evidence as to how or why the equipment did hit the guardrail. There are many reasons why this could have happened other than by negligence of personnel of the casing crew. To say that it must have been the fault of the Lamb personnel, who in this procedure would have been under the direction and control of Hercules Drilling Co. officials, would be mere.speculation.
Accordingly, we find there is ample evi-dentiary basis for the jury’s negative answer to the interrogatory and we will not disturb its verdict. See Canter v. Koehring Co., 283 So.2d 716 (La.1973); Wiley v. Travelers Insurance Co., 300 So.2d 555 (3d Cir. La.App. 1974).
For the reasons assigned, the judgment of the district court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
Affirmed.