WATSON, Judge.
Plaintiff, Maryland Casualty Company, the workmen’s compensation insurer of the City of Lafayette, Louisiana, filed this suit to recover $48,019.65 in benefits paid to Lloyd Sterling. Sterling was struck by an automobile on March 1,1974, while working as a garbage collector for the city sanitation department. Made defendants were: Roger J. Cook, driver of the automobile which struck Sterling; Jules Mouton, III, driver of the truck, which allegedly caused Cook’s car to collide with Sterling; Consolidated Marketing, Inc., owner of the truck driven by Mouton, which was operated under the trade name of Hub City Paper Company; and American Mutual Insurance Company, the liability insurer of Consolidated Marketing and Mouton. Cook’s lia *715 bility insurer is Protective National Insurance Company of Omaha, not named as a party. An intervention by Lloyd Sterling was compromised. The trial court concluded that the accident resulted solely from the negligence of Mouton, and made the following factual findings:
Mouton was driving in the right lane of two northbound traffic lanes. He swerved into the left lane of traffic, directly in front of Cook’s automobile, when it was unsafe to do so, in violation of LSA-R.S. 32:79. Cook, presented with a sudden emergency, turned his car to the right and applied his brakes, unfortunately colliding with Sterling and the garbage truck, which was parked in the right lane. Sterling received severe personal injuries.
The trial court dismissed plaintiff’s demands against Cook and rendered judgment against Mouton, Consolidated Marketing, and American Mutual Insurance Company for $48,019.65.
The defendants cast in judgment have appealed, contending that the trial court erred in finding Mouton negligent; in not holding Sterling guilty of contributory negligence; and in not holding Cook negligent. It is also contended that the trial court erred in admitting the deposition of one Fernest Benoit into evidence.
Maryland Casualty Company has also appealed, asking this court, if it should determine the negligence of Mouton not the sole cause in fact of the accident, to render judgment against Cook, or judgment against all the parties defendants jointly.
The basic issue raised is whether the factual analysis of the accident by the trial court is manifestly erroneous. There is also a subsidiary issue of whether the Benoit deposition was admitted properly into evidence.
Some of the facts of the accident are largely undisputed and they are as follows:
The accident occurred in the early afternoon on March 1, 1974, in the city of Lafayette. A sanitation department truck was parked next to the curb in the right lane of northbound traffic on West University Street, a four-lane street. Double yellow lines in the center of the street divide the four lanes. The outside northbound lane measures 10' and the inside lane 9'. They are divided by dashed white lines. The speed limit at the scene is 35 m.p.h. Sterling was unloading a garbage can into the back of the truck when he heard brakes. Before he could turn around, Sterling was struck by Cook’s car. The impact was 115' 5" north from the northeast corner of the intersection of University and Simcoe streets. Cook’s car left skid marks beginning about 1' over into the left lane of traffic. The right front tire left 29'; the left front tire 32'; the right rear tire 23'; and the left rear tire 27' of skid marks. The four flashing hazard lights of the garbage truck were on at the time. Sterling had been working with Wilson Breaux, the driver of the truck, and John Despanie, who was on the right side attempting to start the auxiliary motor, when the accident occurred.
As to the actual occurrence of the accident and the events immediately preceding it, there are disputes among the parties. This court has relied on the testimony of four witnesses to review the trial court’s determination of the essential facts. They are: Janet Hebert, a passing motorist; Roger Cook, the driver of the vehicle striking Sterling; Wilson Breaux, the driver of the garbage truck; and Jules Mouton, III, driver of the van.
Ms. Janet Hebert, an acquaintance of Roger Cook, gave the following account of the incident: She had seen Cook at Sears before the accident and then observed his Dodge automobile following her Yega on West University. Prior to the intersection of Simcoe and University, Ms. Hebert pulled into the lefthand lane, as did Cook. The light at the intersection of Simcoe and University was green; the speed limit was 35 miles an hour; neither she nor Cook stopped or changed their speed at the intersection. Ms. Hebert then observed a large, white, Hub City Paper truck cut in between her automobile and Cook’s, causing him to swerve to the right to avoid the truck. *716 There were approximately two car lengths between her automobile and Cook’s at the time. Ms. Hebert had not observed the garbage truck or the Hub City truck until this maneuver by the Hub City truck. Ms. Hebert was past the garbage truck when she heard the sound of brakes. She did not remain at the scene because she had to take her baby home and return to work but talked to Cook by telephone that evening.
Roger Joseph Cook’s testimony was similar to that of Ms. Hebert: He was driving north on University toward Four Corners when he was involved in the collision. Cook had earlier seen Ms. Hebert inside Sears, where he was a part-time employee while attending school. He recognized her automobile ahead of him as they drove down University, first seeing it when located approximately in front of the Lafayette Elementary School. She was then in the right-hand lane of the two northbound lanes of University and Cook was in the left. Approximately at the intersection of Congress and University, Ms. Hebert moved into the lefthand lane also. Cook was going about 30 miles per hour when he approached the green light at Simcoe and University and continued past the intersection at the same rate of speed. Both he and Ms. Hebert were at this time in the left lane; Cook estimated the distance between them as four to five car lengths. A panel truck which he described as “like a white wall” (TR. 320) swerved in front of him obscuring his vision. His instinctive reaction was to pull to the right and apply his brakes. There was heavy traffic in the two oncoming lanes. Cook was not in a hurry, being on his way to K-Mart to buy records, and had not made any particular observation of traffic in the right lane until the sudden maneuver by the van which resulted in his trying to avert a collision. When he swerved to the right and applied his brakes, he struck the garbage truck. At the time Cook took evasive action, the van was at an angle, not yet completely in the lefthand lane, and Cook could not see around it. He did not observe the garbage truck until he turned into the righthand lane to avoid striking the van.
Wilson Breaux, who was sitting in the driver’s seat of the garbage truck, observed part of the scene in his rear view mirrors, but could not see both lanes of traffic with either one of them. Breaux thought the Hub City truck was in the left lane, and the accident occurred when Cook tried to pass on the right, saw the garbage truck and slammed on his brakes. Breaux admitted to a criminal record. He said he knew Mouton by sight. The Hub City truck was coming up to the garbage truck’s door when Breaux tried to open it after the crash. He had to wait until it passed before getting out.
Mouton said he was delivering for Hub City at the time of the accident, driving a boxy delivery van. His account of the accident was as follows: There was no visibility to the rear except through his outside mirrors. Mouton was driving in the right lane as he approached the intersection of Simcoe and University. He did not recall whether he turned into the left lane before or after the intersection, or whether he had to stop for the light at the intersection. At some point, Mouton saw the garbage truck stopped ahead and moved into the left lane. Mouton testified he checked his left rear view mirror but did not remember whether he signalled before changing lanes. After moving into the left lane [which Mouton repeatedly referred to as the “middle” lane], he observed the Cook vehicle coming up fast behind him. Mouton had not seen the Cook car in the left lane. He heard but did not see the collision. Mouton did not remember the Hebert car in front of him.
There was testimony by two experts in accident reconstruction: Earl Nickey Picard for plaintiff and George Green, Jr. for defendants. Green said that the skid marks did not indicate an emergency swerving of the Cook vehicle; whereas Picard concluded that, considering reaction time and all of the factors involved, Cook had had to begin his evasive action and applying of the brakes while in the inside or lefthand lane of traffic. Both were accepted by the trial court as qualified experts in the field of accident reconstruction.
*717 The factual evidence, as outlined above, shows the most probable sequence of events to have been that Mouton saw the garbage truck, made an abrupt unsignalled change of lanes and thereby created a sudden emergency for the Cook car in the left lane. Mouton’s testimony was that the left lane was clear, but this is the only point on which he has a clear memory and his testimony is contradicted by that of the disinterested witness, Ms. Hebert. Mouton apparently reacted suddenly when he saw the garbage truck in front of him and failed to check his rear view mirror for the Cook automobile until he had completed the change of lanes. Cook’s instinctive reaction was to swerve to the right and apply his brakes. We agree with the trial court that the reconstruction of the accident by Picard was the more credible of the conflicting versions given by the two experts. It is the one which is confirmed by the testimony of the witnesses. Since the witness Breaux could see only one lane of traffic at the time in his rear view mirrors, it is likely that he received a distorted impression of the sequence of events. The situation is very similar to that in Anderson v. Raines, 304 So.2d 858 (La.App. 4 Cir. 1974), in which the Fourth Circuit reached the same conclusion as the trial court here. That result shows no manifest error and is amply supported by the evidence. Wiley v. Travelers Insurance Company, 300 So.2d 555 (La.App. 3 Cir. 1974), writ denied, 303 So.2d 187 (La.); Vaughn v. Earthly, 313 So.2d 347 (La.App. 3 Cir. 1975), writ denied, 318 So.2d 52 (La.); Andrew v. State Farm Mutual Automobile Ins. Co., 316 So.2d 883 (La.App. 3 Cir. 1975), writ denied, 320 So.2d 915 (La.). to be an eye witness. There was adequate showing that the parties offering the deposition had been unable to obtain his attendance at trial by subpoena. LSA-C.C.P. art. 1428(3)(d). Considerable evidence was taken to cast doubt on the credibility of Benoit, after the deposition' was admitted. The evidence and arguments on this point go more to the weight than to the admissibility. In view of the serious questions raised about Benoit’s motives, we prefer not to consider his testimony. The deposition gives Benoit’s version of the accident. The reasons for judgment do not show what reliance the trial court placed on this deposition, but we find no necessity to rely on it in reaching our decision.
The record shows no contributory negligence on the part of Lloyd Sterling who was engaged in the duties of his employment and undoubtedly considered himself protected by the presence of the large and quite visible garbage truck in front of him. Since it was broad daylight, the truck could have easily been avoided, and Sterling had no reason to anticipate the maneuver by Mouton which resulted in Cook hitting the truck.
For the foregoing reasons, the judgment of the trial court herein is affirmed. All costs are assessed against defendants-appellants, Jules Mouton, III, Consolidated Marketing, Inc. and American Mutual Insurance Company.
AFFIRMED.
There was no error in admitting the deposition of Fernest Benoit, who claimed