343 So.2d 457 (1977)
Deborah Marie REED, etc., Plaintiff-Appellant,
v.
Eby HENRY, Jr., et al., Defendants-Appellees.
No. 5831.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
Ronald E. Dauterive, Lafayette, for plaintiff-appellant.
Bailey & Hollier by W. C. Hollier, Lafayette, Michael L. McAlpine, New Orleans, Stockwell, Sievert, Viccellio & Clements by Fred H. Sievert, Jr., Lake Charles, for defendants-appellees.
Before WATSON, GUIDRY and FORET, JJ.
*458 WATSON, Judge.
This is an appeal by plaintiff from an adverse jury decision, involving basically the question of whether there is a reasonable evidentiary basis for the jury's holding that plaintiff's husband was contributorily negligent. Plaintiff is Deborah Marie Reed, widow of Dale Joseph Duhon, suing individually and on behalf of the minor child of the marriage, Kirk Dale Duhon. Defendants are Eby Henry, Jr., a co-employee of Duhon, whose negligence is alleged to have caused Duhon's death, and Home Insurance Company, which, under the terms of an insurance policy issued to Gulf States Utilities Company, insured Henry against liability for damages in excess of $50,000.
On July 23, 1974, Duhon was working as a helper and Henry as a lineman for Gulf States near Lawtell, Louisiana when a ground line being handled by Henry near the top of a pole fell across a charged electric line and caused the death by electrocution of Duhon, who was in contact with the ground line at the foot of the pole. Henry and Duhon were working as part of a crew which also included Jesna Hopkins, the foreman; Joseph Stelly, another lineman; and Eugene Sarver, another helper. The crew was involved in the transfer of electric lines from old poles to new poles located a few feet farther from the road. At the time of the accident, the crew was working at the second set of poles, the transfer having been accomplished without incident at the first set. The lines, also referred to as "phases", were being worked while carrying electricity because many customers were being served by the particular lines and it was impractical to turn off the voltage.
All of the surviving members of the crew testified as to the procedures being followed. The transfer at the pole where the fatal accident occurred was described by the defendant, Henry, who was the only witness with actual knowledge of the events. He was working in his bucket, which is on the end of a boom attached to a truck, near the top of the pole, while the deceased, Duhon, was working as his helper at the bottom of the pole. These two men were working at the new pole while Stelly and Sarver were working at the old pole. The "field phase" or the charged line on the side of the pole away from the highway had been transferred and secured on a crossarm attached to the new pole. Then the ground wire was sent up by a hand line from Duhon to Henry. The ground wire is a copper wire which is attached at the top to a neutral wire which runs from pole to pole at the top. At a time established by the testimony of the members of the crew to be about five minutes before the accident, the ground wire was sent up and passed through a "house knob" which is an attachment on a pole located below the level of the charged electrical lines or "phases". Then the ground wire was coiled around the "house knob" and Henry told Duhon to "pull it". Duhon's duties at this juncture were to pull the ground wire tight, staple it to the pole and attach it by means of a sleeve and a compression tool to another wire which is grounded at the base of the pole.
This operation by Duhon, according to all members of the crew, should have required approximately 30 seconds.
Then Henry backed his bucket and raised it to the vicinity of the top of the pole where he received the neutral wire from the other lineman. He noticed that his boom was close to the "phase" and that the rubber covers were not positioned correctly so he put a screwdriver in the top of the pole, temporarily hung the neutral between the screwdriver and the pin already located on the top of the pole, backed down and straightened his rubber covering. He went back up, and at some juncture received a white insulator (or "saddle") from Duhon on the ground, installed the insulator on the pin on the top of the pole, put the neutral line into the white insulator or saddle and then proceeded to move his boom down as far as he could to grab the ground wire.
Henry was wearing some rather cumbersome rubber gloves which are required by the safety practices of Gulf States at any time there is danger of contact with a charged wire. The ground wire which Henry *459 took in his hand from the vicinity of the house knob slipped from his grasp and fell across the field phase. Duhon, who must have been in contact with the ground wire at the bottom of the pole, was hit by high voltage, and, after surviving a few minutes, died.
Certain significant features emerged from the testimony of Henry and the other members of the Gulf States crew: (1) the lineman, not the helper, is in the most dangerous area of work because he is in and around highly charged electric lines; (2) the helper's responsibility is to coordinate his work with that of the lineman and not vice versa; (3) the task performed by Duhon in clamping the ground line required normally only about 30 seconds while the work being performed by Henry in the interim would have taken about five minutes; (4) if Duhon experienced any difficulty or delay in completing the work with the ground line, it was his responsibility to notify the lineman; and (5) if Duhon was going to be working on the ground line after it was lifted from the house knob into the vicinity of the phases, he was required by standard safety procedures of Gulf States to wear rubber gloves.
After hearing the witnesses, the jury returned their verdict, finding both Henry and Duhon negligent, and no award of damages was made to plaintiff.
The issue on appeal is whether there is a reasonable evidentiary basis for the jury's decision that Duhon was contributorily negligent.
In reviewing the jury's determination that Duhon was contributorily negligent, we must bear in mind that the primary duty of weighing the evidence, judging credibility of witnesses and making conclusions of fact belongs to the jury.
". . . [T]hese tasks are allotted initially to the triers of fact, here the jury; and the conclusions of the jury as to facts should not be disturbed unless manifestly erroneous." Wiley v. Travelers Insurance Company, 300 So.2d 555 at 558 (La.App. 3 Cir. 1974), writ denied, 303 So.2d 187 (La., 1974).
On review, the Court of Appeal is
". . . not entitled to substitute its findings of fact for the reasonable evaluations of credibility and reasonable inferences of fact made at the trial." Pierre v. Landry, 341 So.2d 890 (La., 1977).
The record reflects a reasonable evidentiary basis for the conclusion that Duhon was contributorily negligent. Specifically, there is a reasonable evidentiary basis for the jury to conclude that Duhon had the primary responsibility of completing his task with the ground wire prior to the lineman elevating the other end of the ground wire to the level of the charged wires. The jury may well have concluded that Duhon was negligent in being in contact with the ground wire when Henry lifted it into the area of the charged wire. The jury may also have concluded that, if Duhon were delayed for any reason, he should have notified Henry and, if it were required that he be working with the ground wire after the elevation of the other end of the wire, he had the responsibility of putting on rubber gloves which were readily and easily available to him.
Therefore, the judgment of the trial court is affirmed. Costs are taxed against plaintiff-appellant.
AFFIRMED.