WATSON, Judge.
This lawsuit, claiming damages for personal injuries to the passengers in an automobile which struck a tree, alleged negligent repair by defendants as the cause of the accident. The trial court dismissed the suits, concluding that plaintiffs had failed to prove the accident resulted from a defect in the steering mechanism of the car. Plaintiffs and a compensation insurer appeal. Plaintiffs are Gary Lynn Malcomb, Robert Lee Stephens, Bernard Wayne Stephens and Paul Dexter McClure. Defendants are Humphries Motors, a partnership, and its two partners, Jimmy Humphries and Marbury F. Humphries. Their insurer, American Employers Insurance Company, incorrectly named originally as “Employers Insurance Company”, was made defendant in a companion case consolidated for trial and appeal and assigned our docket number 5953, 347 So.2d 4. A separation opinion is being rendered in that case.
The occupants of the car had a car pool between Jena and Justiss-Mears Oil Company rig 12, where they worked. The owner-driver of the 1969 Plymouth was Gerald Breithaupt, who had no liability insurance. Malcomb was in the right front seat while the Stephens brothers and McClure were in the back.
The trial court, in a prior compensation suit, found the members of the car pool not in the course of their employment at the time of the accident. Summary judgment was rendered in favor of Justiss-Mears and its workmen’s compensation insurer, Hartford Accident and Indemnity Company, which was affirmed by this court, Stephens v. Justiss-Mears Oil Company, 302 So.2d 717 (La.App. 3 Cir. 1974), and reversed by the Supreme Court as to the only appellant, Malcomb, 312 So.2d 293 (La., 1975). Hartford then compromised Malcomb’s compensation claim for $19,718.17. It was stipulated that Hartford, as intervenor, is entitled to recover this amount from any sum awarded Malcomb, and Hartford has also appealed from the trial court’s dismissal. Traders and General Insurance Company, the collision insurer of the car, whose intervention was dismissed, has not appealed.
The accident occurred on January 26, 1973 at approximately 1:45 p. m. The scene was in LaSalle Parish on Louisiana Highway 127, five or six miles north of the Jena city limits. The speed limit was then 60 miles per hour and that was the estimated speed of the car, according to Trooper Wayne McGuffee of the Louisiana State Police, who investigated the accident. The Plymouth was proceeding north when it ran off the right side of the road, traveled some 150 feet and struck a large pine tree. The highway was straight and level; the weather was clear.
The occupants of the vehicle testified that the driver ran off the road when he became unable to steer the car because the *2 steering wheel was “freewheeling” and that he spun it several times trying to correct the direction of the vehicle. The Plymouth was badly damaged when it struck the tree at a point between the front center and the right fender of the vehicle. All of the plaintiffs sustained serious injuries and particularly Malcomb, who was unconscious for a period of 12 days.
It is undisputed that the 1969 Plymouth automobile had been repaired at the shop of defendant Humphries Motors on January 4, 1973, some 22 days before the accident. Breithaupt testified that he took the car to Humphries because he was having trouble shifting from low to second gear. The vehicle had a manual shift; the steering column was removed and the gear shift tube, which is attached to it, was replaced by Robert Hart, a long-time employee of Hum-phries.
Plaintiffs’ theory is that Hart failed to properly remove and re-install the steering column and that it worked loose, causing the steering to fail and the car to run off the road.
Hart testified that he had removed and replaced about 50 to 75 steering columns in his experience as a mechanic. He said he removed the steering column of the Brei-thaupt car, replaced the gear shift tube and installed the steering column back in the automobile in a proper manner.
Ernest McClendon, a former employee of Humphries, testified at variance to Hart and specified certain deficiencies that he recalled in the removal and replacement of the steering column.
Additionally, several expert witnesses testified as to their theories concerning the steering column.
The trial court, after hearing the lay testimony, the experts and after viewing the various parts of the automobile introduced into evidence, made the following factual conclusions:
“Various experts testified. The Court was most impressed by the testimony of Dr. Gary Paulsen, Dr. O. A. Allbritton and Mr. Don Adams. Paulsen and All-britton agreed the thick gear rod in the steering sector unit was broken by a shearing force. Based on microscopic examination of the heavy rod, Paulsen, plaintiff’s metallurgist said it was a heavy steel cylinder that was harder on the outer surface than in the center. He said this was not a fatigue type fracture but was caused by impact. Additionally, the original steering shaft has an obvious bend in the lower portion. These facts and others lead the Court to conclude the steering shaft and steering sector unit shaft were connected when the car struck the tree. The Court is of the opinion the steering sector unit shaft would not have been snapped if its end were free to move when the steering sector unit was pulled to the side by the impact.
“If the two shafts were still connected on impact which the Court concludes is a very certain fact, it does not make much difference if Hart, the mechanic disassembled the coupler box one way or the other. His operation did not cause the crash. The Court believes it has been established he did disassemble the unit properly because of the condition of the box cover clamps and the retaining pin in the cover after the accident. The small pin in the top section of the coupler box was in place, its weld intact and the pin was sheared off. Since both shafts connected by the box were bent or fractured, it appears more probable than not the cover was ripped off the coupler box in the crash.
“The testimony of Mr. Adams covered all aspects of the dispute and his testimony best explains the overall workings of the steering system. His theoretical comments and factual findings are completely compatible with the metallurgist’s testimony and their observation that the steering section unit shaft was broken and did not fail from fatigue. His observations on the movement of the left front sector toward the center of the car on impact with the tree unquestionably explains the broken and bent shafts and *3 supports the conclusion the two shafts were still connected by the coupler box on impact.” (TR. 123-124)
In summary, the trial court concluded as a fact that the steering column was connected at the time the vehicle struck the tree. Therefore, he found that the plaintiffs failed to prove that improper repairs caused the accident.
On appeal, there are two issues:
(1) whether there is manifest error in the trial court’s conclusion that plaintiffs failed to prove that improper repairs caused the accident; and
(2) whether the trial court erred in allowing expert testimony from a witness who was not a licensed engineer in his home state or in Louisiana.
As to the first issue, our review of the record reveals a reasonable evidentiary basis for the trial court’s conclusions, which are essentially factual. The trial court accepted the testimony of Robert Hart, the mechanic who performed the work, as opposed to that of Ernest McClendon, the former employee of Humphries Motors. The trial court rejected the testimony of plaintiffs not because they “. . . fabricated their testimony for ulterior motives” but because they were mistaken as the result of terror and panic. (TR. 126). Our review indicates that these are reasonable evaluations of credibility and reasonable inferences of fact. Pierre v. Landry, 341 So.2d 891 (La., 1977); Reed v. Henry, 343 So.2d 457 (La.App. 3 Cir. 1977).
As to the experts, the trial court chose basically between the testimony of Professor Lawrence R. Daniels, Jr. of LSU and Don Adams, who is a senior engineer of Chrysler Corporation. The trial court, as indicated by the quotation from the written reasons above, was most impressed with the testimony of Adams who had spent several years working with and testing steering columns. Professor Daniels, who like Adams had inspected the parts from the 1969 Plymouth, admitted that his testimony was based entirely on theory and that he had conducted no tests to determine that his hypothesis was in fact correct. The trial court is entitled to evaluate the testimony of expert witnesses and give their opinions the appropriate weight. Wiley v. Travelers, 300 So.2d 555 (La.App. 3 Cir. 1974) writ denied 303 So.2d 187 (La.).
The final issue is whether the trial court erred in allowing Adams to testify as an expert.
Code of Civil Procedure article 192 defines experts as:
“. . . persons learned or skilled in a science, art, profession or calling . .”
The emphasis is on learning and skill rather than on possession of a license as the plaintiffs contend. The witness, Adams, is a graduate of Iowa State University and has a degree in science and engineering. He possesses an impressive history of work for a number of years in military and civilian capacities with guided missiles and since 1968, has been employed in the Chrysler central engineering offices. His work has been devoted almost entirely to the steering apparatus of automobiles and he occupied the position of Senior Engineer, possessing a patent relating to steering mechanisms. He is a member of several engineering societies. Therefore, the trial judge was correct in recognizing Adams as an expert and allowing him to testify as such.
For the foregoing reasons, the judgment of the trial court is affirmed and all costs are taxed against the plaintiffs.
AFFIRMED.