DOUCET, Judge.
The primary issue presented by this appeal is the amount of disability plaintiff sustained as a result of a work-related injury.
This is a workmen’s compensation claim in which Donald Ray Franklin brought suit against Commercial Union Insurance Company to recover compensation benefits, penalties and attorney’s fees as a result of an injury sustained during the course and scope of his employment. The trial court rendered judgment awarding plaintiff a permanent partial loss of use or function of the left foot of 9% for 125 weeks subject to compensation previously paid, plus medical expenses, past and future. The judgment was rendered in accordance with LSA-R.S. 23:1221 Subsection 4, (g) and (o). Penalties and attorney’s fees were denied. We affirm.
FACTS
It was stipulated that, on August 6,1981, plaintiff sustained an injury while performing his duties as a laborer for Industrial Construction Company, defendant’s insured. The accident occurred when the plaintiff dropped an oxygen bottle on his foot injuring the left great toe. Plaintiff’s wages were sufficient to entitle him to a compensation rate of $163.00 per week. It was also agreed that the defendant had paid compensation from the date of injury through January 13, 1983 for a total of 74 weeks at the rate of $163.00 per week. Medical expenses in the sum of $6,410.50 had been paid.
Following the accident, the plaintiff was seen by Dr. J.R. Sasser. This physician referred the plaintiff to Dr. William G. Akins, Jr., an orthopedic surgeon. Dr. Akins began his treatment of the plaintiff on August 24, 1981. This physician performed several surgical procedures on plaintiff’s great toe to remove small bone fragments to fuse the interphalangeal joint (I.P. joint), the joint near the middle of the toe, and to remove an ingrowing toenail. Dr. Akins saw the plaintiff on numerous instances. He released the plaintiff to return to work on January 3, 1983.
Plaintiff returned to Dr. Akins on four occasions, following the release to return to work, complaining of pain in the toe. Being unable to find any objective cause for complaint, the physician referred plaintiff to Drs. Edward W. Phillips and Lynn E. Foret, orthopedic surgeons, for their evaluation and opinion. Dr. Akins last saw the plaintiff on October 5, 1983.
The defendant terminated compensation payments on January 13, 1983. The plaintiff filed suit on August 3, 1983. The trial of the suit resulted in the disability judgment set forth previously.
The plaintiff appeals contending that the disability award should have been based upon total permanent disability or, in the alternative, the percentage of disability should be increased.
DISABILITY
Dr. Akins saw plaintiff for the first time approximately two weeks after the accident. Plaintiff was complaining of pain in the left great toe. X-rays revealed two *1035 small fractures in the toe. Plaintiff was treated conservatively through October 12, 1981. At that time this physician referred him to Dr. Edward Phillips for a second opinion. Following a consultation between the two physicians, Dr. Akins performed a surgical procedure in November 1981, to remove some small bone fragments from the fractured toe. Following this surgery plaintiff continued to complain of pain in the I.P. joint of the toe. In March 1982, due to plaintiffs continuous complaints, Dr. Akins performed surgery on the toe for the purpose of fusing the I.P. joint thereby alleviating the possibility of pain or an arthritic condition of the toe in the I.P. joint area.
Subsequently, the plaintiff developed an ingrowing nail of this toe. Dr. Akins re-sected the problem by surgical procedures. This occurred in July through November 1982. Following this procedure, he released plaintiff to return to work on January 3, 1983. He saw plaintiff on four occasions following this date when plaintiff complained of pain in the metatarsal pha-langeae joint that joins the toe with the foot (M.P.T.) but Dr. Akins could find no objective evidence of his complaints. Dr. Akins’ testimony in this regard is as follows:
“Q. With [sic] his condition that he has at the present time be one that you would expect to produce pain upon standing, walking on uneven surfaces, climbing and that sort of thing?
“A. I’m ... as I’ve really stated in several reports, I’m unable to explain all of Mr. Franklin’s complaints of pain, and I’ve been unable to substantiate with diagnosis or with objective evidence his complaints. I’ve been unable to explain his complaints.
“Q. Does he complain about the last time you saw him ...
“A. He complains about pain in his big toe, and I’ve sent him to a number of other doctors for second opinions, and I haven’t been able from objective evidence to substantiate or explain his problems.”
Dr. Akins estimated plaintiff’s disability to be 45% of the toe or 9% of the foot (at another point in his testimony he gave the estimate of 8% of the foot).
Dr. Akins referred the plaintiff to Drs. Phillips and Foret in April 1983 for second opinions.
Dr. Phillips examined plaintiff on April 11,1983. Plaintiff was complaining of pain in the M.P.T. joint. After examination of plaintiff, this physician felt that the plaintiff could develop some arthritic condition in the M,P.T. joint which would cause complaints. No treatment was recommended. Dr. Phillips felt that plaintiff could return to work. He concluded that the plaintiff had a disability of 5% of the foot.
Dr. Lynn Foret saw the plaintiff only one time and that was on April 6, 1983. He stated that the fusion of the I.P. joint was satisfactory but that an arthritic condition existed in the M.P.T. joint which was due to the accident. He felt that plaintiff could not return to work as a laborer.
Dr. Foret and Dr. Phillips made X-rays of the left foot but did not make X-rays of the right foot for a comparison of the M.P.T. joints of both feet. Dr. Akins made X-rays of both feet in October 1983 as both of the other physicians had mentioned a bunion or arthritic condition of the M.P.T. joint of the left great toe. By making X-rays of both feet Dr. Akins was able to compare the right and left great toe. By this comparison he concluded that no degenerative changes had occurred as a result of the injury but did find some bony prominences on both feet at the M.P.T. joint which was a natural condition of the plaintiff’s foot and thus the bony condition of the left great toe was not related to the accident. Dr. Akins said the condition was a “normal variant” in the way the plaintiff’s foot was made.
The plaintiff testified that after Dr. Akins released him to return to work he was employed by Sonnier Electric Company as a laborer. The work with Sonnier was sporadic, that is, the union would call plaintiff for a few days work at a time. He earned $3,000.00 with Sonnier in 1983. He *1036 also worked as a painter of a house and other laborer’s work. He stated, however, that he felt pain at various times.
The trial court accepted the medical testimony of Dr. Akins in its determination of the disability of the plaintiff. In his oral reasons for judgment the trial judge stated as follows:
“[D]r. Akins was the treating physician and had the opportunity to observe the plaintiff over a greater period of time on a more frequent basis, the Court will accept the partial disability of the left foot given by Dr. Akins as it feels that Dr. Akins as the treating physician was in a better position to evaluate such a permanent, partial loss or use of the function of the left foot....”
This court in the case of Francis v. Manpower, Inc., 411 So.2d 702, 703 (La.App. 3rd Cir.1982), gave the standard of appellate review in this type of case. This court stated as follows:
“It is the well settled jurisprudence of Louisiana that the findings of the trial court are not to be disturbed in the absence of a showing of manifest error. If there is a reasonable evidentiary basis for the trial court’s findings of fact, its ruling must be affirmed. Wiley v. Travelers Insurance Company, 300 So.2d 555 (La.App. 3rd Cir.1974), writ denied, 303 So.2d 187. Brookshire v. Guidry, 355 So.2d 559 (La.App. 3rd Cir.1978).
‘The trial judge may accept or reject an opinion expressed by any medical expert depending on how impressed he is with the qualifications, credibility, and testimony of the expert. In evaluating the testimony of medical experts of nearly equal qualifications, considerable weight must be attached to the opportunities each doctor had for observation of the patient and the doctor’s familiarity with the patient and his history. The testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of a patient under his direct care is to be accorded greater weight and probative value than that of a physician who has not undertaken treatment of the patient but has merely examined him a few times preparatory to giving expert testimony regarding the patient’s condition. The testimony of a physician who examines and treats the claimant from the inception of injury is entitled to greater weight than the opinion of one who examines the claimant later.’ ”
After an examination of the record, with these principles in mind, we conclude that there is a reasonable factual basis for the trial court’s judgment and it is fully supported by the record.
MOTION TO REMAND
The plaintiff filed a motion to remand the suit for the purpose of taking further testimony of Dr. Akins. Attached to the motion is a report by Dr. Akins dated August 28, 1984 reflecting an examination of the plaintiff as of June 8, 1984, which examination was made after the date of judgment. The medical report attached to the motion contains substantially the same information that was discussed by Dr. Akins in his testimony at trial. In the report, however, he noted that an ingrowing toenail had reoceurred on the affected toe. He stated that this condition may require removal of the toenail. The possible reoccurrence of an ingrowing toenail and treatment therefor was thoroughly discussed by Dr. Akins in his trial testimony. He stated at trial that the procedure for removal would cost approximately $600.00 and would disable the plaintiff for about six weeks. He stated that the plaintiff would then be able to return to work with no increase in disability. The judgment contains a provision for the payment of future medical expenses. Also, the plaintiff has been paid $12,062.00 compensation by the defendant. This amount of compensation far exceeds the amount of compensation that would be due the plaintiff under LSA-R.S. 23:1221, Subsection 4 (9% of $163.00 X 125 weeks = $1,833.75). Ennis v. Plant Service Construction Company, 316 So.2d 168 (La.App. 4th Cir.1975), writ *1037 not cons., 320 So.2d 560 (La.1975). Under these circumstances a remand for further medical testimony by Dr. Akins would serve no useful purpose.
The jurisprudence concerning a motion to remand is set forth in Jones v. LeDay, 373 So.2d 787, 788 (La.App. 3rd Cir.1979) as follows:
“The authority of an appellate court to remand an action for proper consideration to the trial court is conferred in part by LSA-C.C.P. Art. 2164 which states:
‘The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal ... ’
Under the judicial interpretations given to this article, this court is empowered to remand a case for the consideration of new evidence. Roark v. May, 367 So.2d 397 (La.App. 3rd Cir.1978), writ ref., 368 So.2d 123 (La.1979); McKinney v. Levy, 212 So.2d 279 (La.App. 3rd Cir.1968).
“However, although an appellate court is empowered to remand a case, either for a new trial, or for the introduction of additional evidence, such a procedure is sparingly exercised. Herbert v. Traveler’s Indemnity Co., 255 La. 645, 232 So.2d 463 (1970); Guilott v. Guilott, 326 So.2d 551 (La.App. 3rd Cir.1976), writ den., 330 So.2d 316 (La.1976). Although a court should always remand a case whenever the nature and extent of the proceedings dictate such a course, nevertheless, whether or not any particular case should be remanded is a matter which is vested largely within that court’s discretion and such power to remand should be exercised only according to the peculiar circumstances presented in each individual case. Turpin v. Turpin, 175 So.2d 357 (La.App. 2d Cir.1965); Brannon v. Zurich General Accident & Liability Co., 59 So.2d 836 (La.App.Orl.1952).”
After considering this jurisprudence and the facts set forth, we have concluded that the information furnished with the Motion to Remand is insufficient to merit the exercise of this court’s discretionary right to grant plaintiff’s requested motion.
For these reasons, the judgment of the trial court is affirmed with the plaintiff to pay the costs of this appeal.
AFFIRMED.